# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SKYBRIDGE SPECTRUM FOUNDATION,

        Plaintiff,

    v.

FEDERAL COMMUNICATIONS
COMMISSION,

        Defendant.

Civil Action No. 10-01496 (CKK)

## MEMORANDUM OPINION
(February 2, 2012)

Skybridge Spectrum Foundation ("Skybridge") brings this Freedom of Information Act ("FOIA") action against the Federal Communications Commission ("FCC"), seeking the disclosure of records relating to the finances and operations of a handful of its competitors in the telecommunications industry. Currently before the Court is the FCC's [18] Motion for Summary Judgment. Upon careful consideration of the parties' submissions, the relevant authorities, and the record as a whole, the Motion shall be GRANTED and a judgment shall be entered in the FCC's favor.

## I. BACKGROUND

Understanding the factual context of Skybridge's FOIA requests clarifies the nature of the parties' dispute. Accordingly, the Court begins there.

### A.     The Universal Service Administrative Company, the Universal Service Fund, and FCC Forms 499-A and 499-Q

The Universal Service Administrative Company ("USAC") is an independent, non-profit corporation designated by the FCC to serve as the administrator of a fund, called the Universal

1

Service Fund ("USF"), that helps provide communities across the country affordable telecommunications services. Decl. of Divya S. Shenoy ("Shenoy Decl.") ¶ 3. USAC administers USF programs for companies servicing rural areas, low-income consumers, rural healthcare providers, and schools and libraries. *Id.* USAC's work is overseen by the FCC's Wireline Competition Bureau ("WCB"). *Id.*

USF programs are funded by mandatory contributions from interstate telecommunications providers. Nearly all interstate telecommunications providers are required to submit two kinds of "Telecommunications Reporting Worksheets," often referred to as "FCC Form 499-A" and "FCC Form 499-Q," to report detailed revenue information to USAC. *Id.* ¶ 4. USAC then uses that information to calculate the providers' mandatory contributions. *Id.*

FCC Form 499-A is used to report annual revenue information. *Id.* ¶ 9. The form requires interstate telecommunications providers to disclose, among other things: (1) revenues received from services provided for resale by other contributors to federal universal service mechanisms, broken down by the underlying service and the amounts that are attributable to interstate and international services; (2) revenues received from end-users and non-telecommunications sources, broken down by the underlying service and the amounts that are attributable to interstate and international services; and (3) for carriers and certain other entities, percentages of their revenues broken down by region and by whether the revenue is derived from a reseller or an end-user service. *Id.* ¶¶ 11-13, Attach. C (FCC Form 499-A) at 4-7.

Meanwhile, FCC Form 499-Q is used to report quarterly revenue information. *Id.* ¶ 5. The form requires telecommunications providers to disclose, among other things: (1) historical revenue received from contributing resellers, with subtotals for interstate and international revenues; (2) historical revenues received from end-users, with subtotals for interstate and

international revenues; (3) historical revenues from other goods and services; (4) total revenues from the previous categories; and (5) projected gross-billed and collected end-user interstate and international revenues for the three-month period commencing sixty days from the filing deadline. *Id.* ¶ 7, Attach. B (FCC Form 499-Q) at 1.

FCC Form 499-A and FCC Form 499-Q both offer a space for providers to certify that the information they disclose is "confidential" and that its public disclosure would be likely to cause "substantial" competitive harm. *Id.*, Attach. B (FCC Form 499-Q) at 1, Attach. C (FCC Form 499-A) at 8. Both forms also require the provider to certify that "all statements of fact . . . are true" and that its disclosures reflect "an accurate statement of [its] affairs." *Id.* The forms conclude by warning that "persons willfully making false statements in the worksheet can be punished by fine or imprisonment under Title 18 of the United States Code, 18 U.S.C. § 1001." *Id.* (capitalization omitted).

**B.      Skybridge's November 2008 Request for Records Relating to Three Major Competitors**

Skybridge is a non-profit telecommunications company with its principal place of business in Berkeley, California. On November 28, 2008, it submitted a FOIA request to the FCC ("November 2008 Request"), the first of two requests at issue in this case. Def.'s Stmt. of Materials Facts as to Which There Is No Genuine Issue ("Def.'s Stmt.") ¶ 1.[1] In its November

---

[1] To the extent Skybridge intended its Cross-Statement of Material Facts Not in Dispute Pursuant to Federal Rule of Civil Procedure 56 ("Cross-Statement") to respond to the FCC's statement, it will be disregarded because it flatly contravenes the terms of this Court's Scheduling and Procedures Order ("Scheduling Order") dated March 2, 2011 in at least three ways. First, Skybridge fails to respond to each of the FCC's factual assertions "with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied." Scheduling Order ¶ 4(c) (emphasis omitted). Instead, Skybridge selectively responds to the FCC's factual assertions and buries its responses at the end of its statement in lieu of correlating them to the FCC's numbered paragraphs. *See* Pl.'s Cross-Stmt. pt. II ¶¶ 12-15. Quite reasonably, the FCC overlooked these statements and does not specifically address Skybridge's responsive assertions in its reply. *See* Def.'s Mem. of P. & A. in Reply to Pl.'s Opp'n to Def.'s

2008 Request, Skybridge sought an array of records relating to three related companies that

Skybridge characterizes as being among its "major competitors," Pl.'s Opp'n to Def.'s Mot. for

Summ. J. ("Pl.'s Opp'n") at 5—namely, Maritime Communications/Land Mobile LLC

("MCLM"), Mobex Network Services, LLC ("Mobex"), and Waterway Communications

System, LLC ("Watercom") (collectively, "MCLM Group"), Def.'s Stmt. ¶ 1. Specifically,

Skybridge's FOIA request sought: (1) Mobex and Watercom's completed FCC Form 499-A's

and FCC Form 499-Q's for 2001 through 2006; (2) a May 8, 2006 letter from Mobex and

Watercom to USAC demanding a refund; (3) a June 30, 2006 written request from USAC to

Mobex and Watercom asking for additional information; and (4) an August 14, 2006 letter from

MCLM providing the additional information requested by USAC. *Id.* In its request, Skybridge

acknowledged the possibility that some of the information requested might be deemed

"confidential," but suggested that confidentiality should be "waived in the public interest."

Shenoy Decl., Attach. D (November 2008 Request) at 2.

On December 10, 2008, the FCC's WCB forwarded Skybridge's November 2008

Request to the MCLM Group in order to ascertain whether it had any objection to the release of

the requested information. Def.'s Stmt. ¶ 2. On December 16, 2008, the MCLM Group

responded by objecting to the release of certain records on the grounds that Skybridge is a

"director competitor" and that information in the requested records could be used to determine:

---

Mot. for Summ. J. ("Def.'s Reply") at 3-4. Second, even though it is clear that Skybridge disputes some of the FCC's factual assertions only in part, *see, e.g.*, Pl.'s Cross-Stmt. pt. II ¶¶ 7, 13, it fails to "specifically identify which parts are admitted and which parts are denied," Scheduling Order ¶ 4(c). Third, Skybridge's selective responses are often devoid of references to supporting evidence, *see, e.g.*, Pl.'s Cross-Stmt. pt. II ¶¶ 12, 15, despite being told that the "responding party must include . . . specific citations to the record," Scheduling Order ¶ 4(e). In short, Skybridge has defied the Court's clear and unambiguous instructions and, because it has failed to controvert the FCC's factual assertions in the manner prescribed, the Court exercises its discretion to treat those factual assertions as conceded.

(1) the "growth and placement of competitive lines of business"; (2) "general market segmentation and positioning"; and (3) the "competitive strength" of the MCLM Group.  *Id.* ¶ 3.

On January 22, 2009, Skybridge responded by arguing that the disclosure of the requested records would be in the public interest.  *Id.* ¶ 4.  Skybridge conceded that the requested records contained "financial information," but suggested that the "public interest in release" outweighs the private interest in confidentiality.  Shenoy Decl., Attach. G (Ltr. From Skybridge to FCC dated Jan. 22, 2009) at 1-2.  Skybridge also claimed that any "publicly disclosable information" on FCC Form 499-A and FCC Form 499-Q should be released, but admitted that the FCC could redact "any information properly deemed confidential."  *Id.* at 3.

On August 24, 2009, the FCC's WCB granted in part and denied in part Skybridge's November 2008 Request, releasing nineteen pages with some redactions.  Def.'s Stmt. ¶ 5. Those nineteen pages corresponded to the final three items of Skybridge's request—that is, correspondence between USAC and the MCLM Group.  Shenoy Decl., Attach. H (Ltr. From FCC to Skybridge dated Aug. 24, 2009) at 1.  Meanwhile, citing Exemption 4, the WCB withheld the requested FCC Forms 499-A and 499-Q in their entirety, as well as other information reflecting checking account information, contributor identification, payment history, amounts owed to USF, customer information, invoices, and network routing information.  *Id.* at 4.  In a six-page cover letter supporting its determinations, the WCB explained that the release of such information would likely cause substantial competitive harm to the MCLM Group.  *Id.* at 4-5.  Skybridge was informed that it had the right to "file an application for [administrative] review" of the WCB's determination and was told how to go about doing so.  *Id.* at 5-6.

On June 24, 2009, Skybridge informally asked the FCC to produce the records covered by its November 2008 Request.  Def.'s Stmt. ¶ 6.  Skybridge did not challenge the substance of

the WCB's initial determination, but rather complained about the timeliness of the FCC's response and, in particular, its alleged failure to produce the "non-confidential" portions of the records that the WCB concluded should be produced.  Shenoy Decl., Attach. M (Ltr. From Skybridge to FCC dated June 24, 2009) at 1.  In making this complaint, Skybridge either overlooked or ignored the statement in the WCB's determination letter providing that it would "withhold[] release of these materials until all periods for requesting review or stay have passed, and any such requests have been finally resolved." *Id.*, Attach. H (Ltr. From FCC to Skybridge dated Aug. 24, 2009) at 1 n.2 (citing 47 C.F.R. § 0.461(i)(2), (4)).[2]

On September 22, 2009, Skybridge filed a formal administrative appeal of the WCB's initial determination.  Def.'s Stmt. ¶ 7.  In its filing, Skybridge identified various alleged "errors" in the WCB's decision.  Shenoy Decl., Attach. O (Appl. for Review for FOIA Control No. 2009-089) at 3.  With respect to the WCB's decision to withhold information under Exemption 4, Skybridge argued that the MCLM Group's submissions to the FCC were "[f]raudulent, false, or sham filings" ineligible for protection under Exemption 4, which Skybridge interpreted as being limited to "legitimate confidential commercial information of value to legitimate commerce." *Id.* at 7.  Skybridge specifically argued that the information withheld did not meet the legal definition of "confidential" information, *see infra* Part III.C.1, because the release of fraudulent information (1) would not impair the FCC's ability to obtain legitimate commercial information in the future and (2) would not cause any legitimate competitive harm other than to "expose the sham." *Id.* at 8.

---

[2]  Temporarily delaying disclosure makes sense in this context because, in contrast to the typical FOIA scenario, third parties seeking to maintain the confidentiality of their information may also seek review of the agency's initial determination.  Thus, requiring immediate disclosure would effectively vitiate third parties' ability to obtain meaningful administrative review.

C.      **Skybridge's December 2008 Request for Records Relating to a Fourth Major Competitor**

On December 4, 2008, Skybridge submitted a second FOIA request to the FCC ("December 2008 Request"), seeking a similar universe of records relating to Paging Systems, Inc. ("PSI"), Def.'s Stmt. ¶ 8, an entity that Skybridge likewise describes as a "major competitor," Pl.'s Opp'n at 5.  Specifically, Skybridge's December 2008 Request sought: (1) PSI's completed FCC Form 499-A's and FCC Form 499-Q's for 1994 through the date of the request; (2) any equivalent forms; (3) any other records that PSI filed with USAC; and (4) written confirmation that PSI filed FCC Form 499-A's and FCC Form 499-Q's, or the equivalent, for 1994 through the date of the request.  *Id.*  In its request, Skybridge expressly acknowledged that "[s]ome of the information in the requested records may be deemed by the FCC as confidential."  Shenoy Decl., Attach. I (December 2008 Request) at 2.

On December 22, 2008, the FCC's WCB forwarded Skybridge's December 2008 Request to PSI in order to ascertain whether it had any objection to the release of the requested information.  Def.'s Stmt. ¶ 9.  On January 7, 2009, PSI responded by objecting to the release of certain records on the ground that Skybridge's request sought confidential and proprietary information, including "sensitive financial data which relates to subscriber revenue," and that the "[d]isclosure of such information to competitors or potential competitors may have a detrimental impact on PSI."  Shenoy Decl., Attach. K (Ltr. from PSI to FCC dated Jan. 7, 2009) at 2.

On January 22, 2009, Skybridge responded by arguing that the disclosure of the requested records would be in the public interest.  Def.'s Stmt. ¶ 11.  Skybridge conceded that the requested records contained "financial information," but suggested that the "public interest in release" outweighs the private interest in confidentiality.  Shenoy Decl., Attach. G (Ltr. From Skybridge to FCC dated Jan. 22, 2009) at 1-2.  Skybridge also claimed that any "publicly

disclosable information" on FCC Form 499-A and FCC Form 499-Q should be released, but admitted that the FCC could redact "any information properly deemed confidential." *Id.* at 3.

On August 24, 2009, the FCC's WCB granted in part and denied in part Skybridge's December 2008 Request, releasing eight pages and withholding thirty-six pages in full. Def.'s Stmt. ¶ 12. The eight pages represented attachments to the FCC Form 499-A's that PSI filed for years 2003, 2004, 2006, and 2008. Shenoy Decl., Attach. L (Ltr. from FCC to Skybridge dated Aug. 24, 2009) at 2. The WCB also provided written confirmation of what filings were made by PSI between 1994 and 2009. *Id.* at 4-5. Meanwhile, citing Exemption 4, the WCB withheld the requested FCC Forms 499-A and 499-Q in their entirety. *Id.* at 2. In a six-page cover letter supporting its determination, the WCB explained that the information requested included "sensitive financial data, which relates to subscriber revenues, and that disclosure of such information may have a detrimental impact on [PSI]." *Id.* at 3. Skybridge was informed that it had the right to "file an application for [administrative] review" of the WCB's determination and was told how to go about doing so. *Id.* at 5-6.

On June 24, 2009, Skybridge informally asked the FCC to produce the records covered by its December 2008 Request. Def.'s Stmt. ¶ 6. Skybridge did not challenge the substance of the WCB's initial determination, but rather complained about the timeliness of the FCC's response and, in particular, its alleged failure to produce the "non-confidential" portions of the records that the WCB concluded should be produced. Shenoy Decl., Attach. M (Ltr. From Skybridge to FCC dated June 24, 2009) at 1. Again, in making this complaint, Skybridge either overlooked or ignored the statement in the WCB's determination letter providing that it would "withhold[] release of these materials until all periods for requesting review or stay have passed,

and any such requests have been finally resolved." *Id.*, Attach. L (Ltr. from FCC to Skybridge dated Aug. 24, 2009) at 1 n.3 (citing 47 C.F.R. § 0.461(i)(2), (4)).

On September 22, 2009, Skybridge filed a formal administrative appeal of the WCB's initial determination. Def.'s Stmt. ¶ 7. In its filing, Skybridge identified various alleged "errors" in the WCB's decision. Shenoy Decl., Attach. O (Appl. for Review for FOIA Control No 2009-136) at 3. With respect to the WCB's decision to withhold information under Exemption 4, Skybridge again argued that PSI's submissions to the FCC were "[f]raudulent, false, or sham filings" ineligible for protection under Exemption 4, which Skybridge interpreted as being limited to "legitimate confidential commercial information of value to legitimate commerce." *Id.* at 9. Skybridge specifically argued that the information withheld did not meet the legal definition of "confidential" information, *see infra* Part III.C.1, because the release of fraudulent information (1) would not impair the FCC's ability to obtain legitimate commercial information in the future and (2) would not cause any legitimate competitive harm other than to "expose the sham." *Id.*

**D.      The FCC's Final Determination**

On August 3, 2010, the FCC issued a final written decision resolving the two administrative appeals filed by Skybridge in connection with Skybridge's November 2008 and December 2008 Requests, as well as a third administrative appeal filed by PSI. *See In re Skybridge Spectrum Found.*, 25 F.C.C. Recd. 11064 (F.C.C. 2010). The FCC divided its decision into three parts.

First, the FCC denied Skybridge's appeal of the WCB's resolution of the November 2008 Request. Suggesting that "Skybridge d[id] not challenge WCB's determination that disclosure of the material at issue here would likely cause substantial competitive harm to MC/LM," *id.* at

11068, the FCC interpreted Skybridge's appeal as confined to a more narrow argument that the information submitted by the MCLM Group was "false" and "fraudulent" and therefore ineligible for protection under Exemption 4, *id.* at 11066. As a legal matter, the FCC emphasized that Skybridge "cite[d] no authority" for its position, *id.* at 11067, and concluded that "there is no justification to adopt a 'fraud exception' to Exemption 4," *id.* at 11069. The FCC reasoned that Exemption 4 "does not have the effect of shielding alleged misconduct from the officials with jurisdiction for investigating it" because, regardless of whether information is released publicly through FOIA, the "materials are freely available to both USAC and the FCC for investigation." *Id.* at 11067. As a factual matter, the FCC concluded that Skybridge presented "nothing more than . . . unsubstantiated allegations of fraud," *id.*, and found that "the allegedly fraudulent nature of the records at issue here does not place them outside the scope of Exemption 4," *id.* at 11069.

Second, turning to Skybridge's appeal with respect to the December 2008 Request, the FCC similarly found that "Skybridge d[id] not question the WCB's determination of competitive harm but rather assert[ed] that PSI's filings are fraudulent." *Id.* at 11070. The FCC denied the appeal on identical grounds. *Id.* at 11070-71.

Third, and finally, the FCC granted in part PSI's administrative appeal, agreeing with PSI that certain information responsive to Skybridge's December 2008 Request should be withheld under Exemption 6 in light of personal privacy concerns. *Id.* at 11072.

### E.     The Instant Action

Skybridge commenced this action on September 2, 2010, challenging the FCC's decision to withhold information responsive to its November 2008 and December 2008 Requests. *See* Compl. for Mandatory Inj. Relief. After the FCC filed a responsive pleading, the Court set a

schedule for the briefing of motions for summary judgment, *see* Scheduling Order at 4, which was subsequently extended.  In accordance with the extended schedule, the FCC filed the pending Motion for Summary Judgment on June 3, 2011.  *See* Def.'s Mem. of P. & A. in Supp. of Defs.' [sic] Mot. for Summ. J. ("Def.'s Mem.").  In the course of preparing its motion, the FCC conducted a further review of the records withheld from Skybridge and concluded that additional segregable information could and should be disclosed.  Shenoy Decl. ¶¶ 42-43.  The FCC sent the supplemental release to Skybridge on June 30, 2011.  *See* Decl. of Tamir Damari ("Damari Decl."), Ex. 1 (Ltr. from FOIA to Skybridge dated June 30, 2011).  The supplemental release included redacted copies of the MCLM Group and PSI's completed FCC Form 499-A's and FCC Form 499-Q's, as well as additional portions of the correspondence between USAC and the MCLM Group.  Shenoy Decl. ¶ 44; Damari Decl., Ex. 1 (Schedule of Documents Released June 29, 2011).  By Skybridge's own account, "[t]his released information represents at least the majority of the documents and information sought in the subject two FOIA requests."  Decl. of Warren C. Havens ("Havens Decl.") ¶ 24.

Skybridge filed its opposition on August 1, 2011.  Conceding that the FCC's supplemental release "comprise[d] the vast majority of the documents subsumed with [its] [r]equests which had yet to be produced," Pl.'s Opp'n at 14, Skybridge dedicated the lion's share of its submission to what it styled as a "Cross-Motion for Summary Judgment on the Issue of Attorneys' Fees."  On August 2, 2011, the Court denied Skybridge's cross-motion without prejudice, finding that the motion was "in actuality just a petition for fees under 5 U.S.C. § 552(a)(4)(E)(i), which is a matter collateral to the merits."  Min. Order (Aug. 2, 2011).  The Court granted Skybridge "leave to re-file a petition for fees after the Court has resolved the merits of this case."  *Id.*

On September 9, 2011, the FCC filed a reply in support of its Motion for Summary

Judgment.  *See* Def.'s Reply.  Accordingly, the motion is fully briefed and ripe for adjudication.

In an exercise of its discretion, the Court finds that holding oral argument would not be of

assistance in rendering a decision.  *See* LCvR 7(f).

## II. LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency

action to the light of public scrutiny."  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)

(quotation marks omitted).  However, Congress remained sensitive to the need to achieve

balance between these objectives and the potential that "legitimate governmental and private

interests could be harmed by release of certain types of information."  *Critical Mass Energy*

*Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (*en banc*) (quotation

marks omitted), *cert. denied*, 507 U.S. 984 (1993).  To this end, FOIA "requires federal agencies

to make Government records available to the public, subject to nine exemptions for categories of

material."  *Milner v. Dep't of Navy*, __ U.S. __, 131 S. Ct. 1259, 1261-62 (2011).  Despite the

availability of such exemptions, "disclosure, not secrecy, is the dominant objective of the act."

*Rose*, 425 U.S. at 361.  For this reason, the "exemptions are explicitly made exclusive, and must

be narrowly construed."  *Milner*, 131 S. Ct. at 1262 (quotation marks and citation omitted).

Summary judgment is proper when the pleadings, the discovery materials on file, and any

affidavits or declarations "show[] that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  When presented with a

motion for summary judgment in this context, the district court must conduct a "de novo" review

of the record, 5 U.S.C. § 552(a)(4)(B), which "requires the court to ascertain whether the agency

has sustained its burden of demonstrating that the documents requested . . . are exempt from

disclosure," *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55,

57 (D.C. Cir. 2003) (quotation marks omitted). "Consistent with the purpose of the Act, the

burden is on the agency to justify withholding requested documents," *Beck v. Dep't of Justice*,

997 F.2d 1489, 1491 (D.C. Cir. 1993), and only after an agency has proven that "it has fully

discharged its disclosure obligations" is summary judgment appropriate, *Weisberg v. U.S. Dep't*

*of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). In ascertaining whether the agency has met its

burden, the district court may rely upon agency affidavits or declarations. *Military Audit Project*

*v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "If an agency's affidavit describes the

justifications for withholding the information with specific detail, demonstrates that the

information withheld logically falls within the claimed exemption, and is not contradicted by

contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment

is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. U.S. Dep't of Def.*,

628 F.3d 612, 619 (D.C. Cir. 2011). In other words, "[u]ncontradicted, plausible affidavits

showing reasonable specificity and a logical relation to the exemption are likely to prevail."

*Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011).

## III. DISCUSSION

**A.**     **The FCC Has Failed to Establish that the Doctrine of Administrative
Exhaustion Circumscribes the Scope of this Case**

As a preliminary matter, the Court must address the FCC's threshold contention that the

scope of this action is circumscribed by Skybridge's alleged failure to fully exhaust its

administrative remedies. Under FOIA, "[e]xhaustion of administrative remedies is generally

required before seeking judicial review 'so that the agency has an opportunity to exercise its

discretion and expertise on the matter and to make a factual record to support its decision.'"

*Wilbur v. Cent. Intelligence Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (*per curiam*) (quoting

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)).  However, in this context, the

doctrine is "jurisprudential" and "not jurisdictional."  *Hidalgo v. Fed. Bureau of Investigation*,

344 F.3d 1256, 1258 (D.C. Cir. 2003).  Broadly speaking, a plaintiff's "failure to exhaust

precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative

scheme' support such a bar."  *Id.* at 1258-59 (quoting *Oglesby*, 920 F.2d at 61).

In this case, it is undisputed that Skybridge in fact sought and obtained administrative

review of the WCB's initial determinations, resulting in a final written decision from the FCC.

*See In re Skybridge Spectrum Found.*, 25 F.C.C. Recd. 11064 (F.C.C. 2010).  For this reason, the

FCC wisely forgoes an argument that Skybridge is barred from pursuing this action in its entirety

and instead tenders a more narrow exhaustion argument, suggesting that Skybridge is precluded

from raising certain arguments or theories before this Court by failing to raise them below.

Specifically, the FCC contends that Skybridge's administrative appeal did not challenge the

WCB's determinations that (1) in connection with Exemption 4, the information withheld by the

WCB constituted confidential commercial information the release of which would likely result in

competitive harm to third parties, and (2) in connection with Exemption 6, the disclosure of the

information withheld would constitute an unwarranted invasion of third parties' personal

privacy.  *See* Def.'s Mem. at 5-7, 19 n.3.  Whatever the legal merits of the FCC's exhaustion

argument in the abstract, it fails at the outset because it rests on a false premise—namely, that

Skybridge could and should have raised these arguments below but did not do so.

       1.     Skybridge's Administrative Appeal Did Contest Whether the Information
             Withheld by the WCB Constituted Confidential Commercial Information

Distilled to its essence, Exemption 4 protects confidential commercial information

submitted to agencies by third parties.  *See infra* Part III.C.1.  To invoke the exemption to protect

information submitted under compulsion, the agency must show that disclosure would either (1)

impair the government's ability to obtain similar information in the future or (2) cause substantial competitive harm to the person from whom the information was obtained. *See id.*  In this regard, the FCC claims that Skybridge's "administrative appeal was limited to the question of whether a 'fraud exception' should be carved out of Exemption 4." Def.'s Mem. at 7. According to the FCC, Skybridge "did not challenge the [WCB's] determination that the information being withheld constituted commercial information the release of which would likely result in competitive harm" to the MCLM Group and PSI. *Id.*  The Court disagrees.

In support of its interpretation, the FCC cites only to its own final written decision, in which it found that Skybridge "d[id] not challenge" and "d[id] not question" that the disclosure of the information withheld by the WCB would cause substantial competitive harm to the MCLM Group and PSI. *In re Skybridge Spectrum Found.*, 25 F.C.C. Recd. at 11068, 11070. But the record does not support such a parsimonious construction of Skybridge's written requests for administrative review.  Therein, Skybridge argued that the WCB's decision to withhold information under Exemption 4 was improper because the MCLM Group's and PSI's filings were fraudulent.  From this premise, it argued that the information withheld by the WCB was ineligible for protection under Exemption 4 because the release of fraudulent information would, as a logical matter, neither (1) impair the FCC's ability to obtain legitimate commercial information in the future nor (2) cause any legitimate competitive harm to the MCLM Group or PSI.  *See* Shenoy Decl., Attach. O (Appl. for Review for FOIA Control No. 2009-089) at 8, Attach. O (Appl. for Review for FOIA Control No 2009-136) at 9.  In short, Skybridge undeniably argued that the information withheld by the WCB in this case did not meet the legal definition of confidential commercial information, as that definition has been developed by the

federal courts.  Accordingly, the doctrine of administrative exhaustion presents no bar to

Skybridge now raising such an argument before this Court.

>    2.    There Was No Reason for Skybridge to Know that the FCC Would Rely
>          on Exemption 6 as a Basis for Withholding Information

The FCC next faults Skybridge for failing to "administratively appeal the application of

Exemption 6."  Def.'s Mem. at 19 n.3.  The argument requires little attention.  True, Skybridge's

written requests for administrative review of the WCB's initial determination make no mention

of Exemption 6, but there is a good reason for the omission: the WCB did not cite Exemption 6

as a basis for withholding any information.  *See* Shenoy Decl., Attach. H (Ltr. From FCC to

Skybridge dated Aug. 24, 2009), Attach. L (Ltr. from FCC to Skybridge dated Aug. 24, 2009).

Indeed, there was no reason for Skybridge to believe that Exemption 6 was even at issue until the

FCC issued its final written decision citing Exemption 6 as a basis for the non-disclosure of

certain personal information.  *In re Skybridge Spectrum Found.*, 25 F.C.C. Recd. at 11072.  As a

result, Skybridge could not have known it needed to raise issues surrounding Exemption 6 at the

time its administrative appeal was due.  In other words, to the extent the issue was not fully

developed on the administrative level, the fault lies with the FCC and not Skybridge.

Accordingly, the doctrine of administrative exhaustion presents no bar to Skybridge now

challenging the FCC's reliance upon Exemption 6 before this Court.

**B.    Skybridge Has Conceded the Merits of the FCC's Continued Withholding
        Decisions**

Even though the FCC has not shown that the doctrine of administrative exhaustion

precludes Skybridge from pursuing certain arguments in this case, the Court nonetheless

concludes that Skybridge has conceded the merits of the FCC's continued withholding decisions.

In this regard, the FCC begins its reply by observing that Skybridge has offered "little by way of

opposition to [its] dispositive motion."  Def.'s Reply at 2.  That observation is a radical

understatement. Indeed, based upon a searching review of Skybridge's opposition, it does not

appear that Skybridge even *intended* to challenge the FCC's decision to continue withholding

some information responsive to Skybridge's November 2008 and December 2008 Requests.

After Skybridge commenced this action, the FCC revisited its withholding decisions and

concluded that additional information could and should be disclosed. *See* Shenoy Decl. ¶¶ 42-

43. In a supplemental release, the FCC sent Skybridge a broad universe of documents it had

previously withheld, including redacted copies of the MCLM Group's and PSI's completed FCC

Form 499-A's and FCC Form 499-Q's and additional portions of the correspondence between

the MCLM Group and USAC.[3] *See* Damari Decl., Ex. 1 (Ltr. from FOIA to Skybridge dated

June 30, 2011). In its opposition, Skybridge repeatedly asserts that the FCC's supplemental

release covered "the vast majority of the documents subsumed within [its] [r]equests." Pl.'s

Opp'n at 4; *see also id.* at 14-15 ("The released documents comprise the vast majority of the

documents subsumed within the Requests which had yet to be produced by the FCC."); *id.* at 16

("[T]he FCC ultimately produced (in whole or in part) virtually all of the documents

requested."); Havens Decl. ¶ 24 ("This released information represents at least the majority of

the documents and information sought in the subject two FOIA requests."). In essence,

Skybridge concedes that its claims are, if not entirely then at least largely, moot. *See Perry v.*

*Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) ("[H]owever fitful or delayed the release of

---

[3] Although Skybridge faults the FCC for failing to explain why the information included in its supplemental release was not produced earlier, *see* Pl.'s Opp'n at 15, the particular circumstances of this case do not present a basis for penalizing the FCC for its decision to release records it had previously withheld. *See Military Audit*, 656 F.2d at 738 ("emphatically reject[ing]" an argument that an agency's "change of heart" and decision to release documents in the midst of litigation somehow "vitiates the agency's continuing claims against the release of the remaining information."); *Am. Civil Liberties Union*, 628 F.3d at 627 ("As in previous FOIA cases, we decline to penalize a government agency for voluntarily reevaluating and revising its FOIA withholdings.").

information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform.").

In fact, the only time Skybridge even touches upon the merits of the FCC's withholding decisions is in the context of addressing its claimed entitlement to attorneys' fees, which the Court previously denied as premature.  Noting that "[t]he reasonableness of the responding agency in withholding documents is a factor to be considered in evaluating whether an award of attorneys' fees is proper," Pl.'s Opp'n at 25, the heart of Skybridge's opposition is its argument that it is the substantially prevailing party in this action because the FCC's supplemental release reflects a "voluntary or unilateral change" in the FCC's position, 5 U.S.C. § 552(a)(4)(E).  In other words, Skybridge is arguing that it has already obtained the desired outcome.  Consistent with this interpretation, Skybridge's opposition is consistently targeted not to information that is *currently* being withheld by the FCC, but rather the propriety of the FCC's *past* withholding decisions—that is, the information the FCC withheld before its supplemental release.  *See id.* at 4 (claiming that "the bases upon which the FCC *originally* withheld documents . . . do not in fact support withholding.") (emphasis added); *id.* at 33 ("[T]he FCC did not act reasonably *in the first instance* by withholding these documents.") (emphasis added); *id.* at 37 ("[T]he non-exempt portions of these documents should nonetheless have been produced *prior to the inception of this litigation*.") (emphasis added).  For all these reasons, the Court does not understand Skybridge as intending to challenge the FCC's ongoing withholding decisions.

Still, the Court acknowledges that Skybridge's intentions are not completely free from doubt.  For instance, Skybridge states in its opposition not only that its "Cross-Motion on the issue of attorneys' fees should be granted," but also suggests, in passing and with no meaningful explication whatsoever, that the FCC's "Motion for Summary Judgment should be denied."  Pl.'s

Opp'n at 38.  Since the FCC's Motion for Summary Judgment is directed exclusively towards

establishing the propriety of its decision to continue withholding certain information even after

its supplemental release, one might read Skybridge's stray comment as incorporating a challenge

to that decision.  However, even assuming that Skybridge *intended* to challenge the propriety of

the FCC's continued withholding decisions, the Court would nonetheless conclude that

Skybridge has conceded the merits of the FCC's arguments for continued non-disclosure by

failing to tender a meaningful opposition.

 In its opening memorandum, the FCC provides a thorough, thoughtful, and exhaustive

account as to why it has acted properly by continuing to withhold confidential commercial

information under Exemption 4 and personal identifying information under Exemption 6.  *See*

Def.'s Mem. at 7-24.  It couples this account with an itemized index correlating withheld

information with a specific exemption and the justification for non-disclosure.  *See* Shenoy Decl.

¶ 44, Attach. A (Table of Withheld Records); Damari Decl., Ex. 1 (Schedule of Documents

Released June 29, 2011).[4]  Meanwhile, Skybridge's opposition does not directly respond to the

FCC's arguments for continued non-disclosure.  Despite tendering a litany of objections as to the

propriety of the FCC's past withholding decisions, Skybridge never identifies a *single* document,

or a *single* item of information, that it claims the FCC is improperly withholding today.  In this

Circuit, "it is well understood . . . that when a plaintiff files an opposition to a dispositive motion

and addresses only certain arguments raised by the defendant, a court may treat those arguments

that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global*

*Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004); *accord*

*Lewis v. District of Columbia*, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011).  In

---

[4] At no point has Skybridge challenged the adequacy of the FCC's submissions.

this instance, the Court exercises its discretion to treat the FCC's arguments for continued non-disclosure as conceded and, because that is dispositive of the pending motion, the Court shall GRANT the FCC's [18] Motion for Summary Judgment on that basis alone.[5]

## C.   The FCC Has Properly Invoked Exemptions 4 and 6

Even assuming, for the sake of argument, that the Court were inclined to reach the merits of the FCC's Motion for Summary Judgment, the result would be the same because the FCC has properly invoked Exemptions 4 and 6 as a basis for continued non-disclosure.

### 1.   The FCC Has Properly Invoked Exemption 4

The FCC relies upon Exemption 4 as a basis for continuing to withhold detailed revenue information obtained from the MCLM Group and PSI via their completed FCC Form 499-A's and FCC Form 499-Q's, as well as portions of the correspondence between USAC and the MCLM Group reflecting revenue information, checking account information, payment history, amounts owed to USF, customer information, and service pricing.  Exemption 4 protects "commercial or financial information obtained from a person and privileged or confidential." [5]

---

[5]  In reaching this conclusion, the Court is mindful that the "strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).  In this case, the FCC has met that burden by tendering an "[u]ncontradicted, plausible" index and declaration explaining with reasonable specificity the justification for continued non-disclosure and correlating the withheld information with a specific exemption. *Ancient Coin Collectors Guild*, 641 F.3d at 509.  The entire point of requiring an agency to go through this evidentiary exercise is to permit "adequate adversary testing" by putting the plaintiff in a position to provide "controverting illumination" with reference to specific information that has been withheld and to explain why the exemption cited does not provide a basis for non-disclosure. *Vaughn v. Rosen*, 484 F.2d 820, 824-25 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).  In this case, Skybridge has conceded the pending motion by failing to identify a single document or a single item of information that the FCC continues to withhold and then explain why the FCC's arguments for non-disclosure are insufficient.  Or, viewed from a slightly different perspective, Skybridge's failure to identify a single document or item of information that it claims is *currently* being improperly withheld can be seen as a failure to state an actual live controversy. *See Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.").

U.S.C. § 552(b)(4).  To invoke the exemption, an agency must show that "the information is: (1) commercial or financial; (2) obtained from a person, and (3) privileged or confidential." *Canadian Commercial Corp. v. Dep't of Air Force*, 442 F. Supp. 2d 15, 30 (D.D.C. 2006), *aff'd*, 514 F.3d 37 (D.C. Cir. 2008).  The FCC has satisfied this three-part showing.

First, courts have eschewed an interpretation of "commercial" information that would limit Exemption 4's coverage to "records that reveal basic commercial operations or relate to the income-producing aspects of a business." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 313, 319 (D.C. Cir. 2006) (quotation marks and notations omitted).  Rather, the term has been construed broadly: "information is 'commercial' under the exemption if . . . it serves a commercial function or is of a commercial nature." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002) (quotations marks omitted).  Here, there can be no doubt that the information that the FCC continues to withhold falls well within the ambit of this concept: revenue information, checking account information, service pricing, and the like are at the core of the "commercial or financial information" eligible for protection under Exemption 4.  *See* Shenoy Decl. ¶¶ 44, 46-52.

Second, information must be "obtained from a person" to be eligible for protection under Exemption 4.  The term "person" includes "an individual, partnership, association, or public or private organization other than an agency."  5 U.S.C. § 551(2).  In other words, the information must be "obtained outside the Government." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 360 (1979).[6]  This requirement is also clearly satisfied in this case because

---

[6] An agency's summary of information obtained from sources outside the government may also be eligible for protection. *See, e.g., Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 529-30 (D.C. Cir. 1979).

the information that the FCC continues to withhold under Exemption 4 was submitted by third parties to USAC—namely, the MCLM Group and PSI. *See* Shenoy Decl. ¶¶ 44, 46-52.

Third, information must be "privileged or confidential" to be eligible for protection under Exemption 4. In this case, the FCC claims that the information at issue is "confidential," a term that has been the focus of the vast majority of the litigation surrounding Exemption 4. Whether information is confidential "turns in part on whether it was provided to the government voluntarily or under compulsion." *McDonnell Douglas Corp. v Nat'l Aeronautics & Space Admin.*, 180 F.3d 303, 304 (D.C. Cir. 1999).

In this case, the bulk of the information that the FCC continues to withhold from Skybridge originates from the FCC Form 499-A's and FCC Form 499-Q's completed by the MCLM Group and PSI. The parties agree that interstate telecommunications providers, including the MCLM Group and PSI, are required to complete these forms. *See* Def.'s Mem. at 13; Pl.'s Opp'n at 36. Therefore, the FCC must show that disclosure of the information it continues to withhold "would be likely either (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010) (quotation marks omitted). Regardless of whether the disclosure of such information would impair the FCC's ability to obtain similar information in the future, the FCC has shown that forced disclosure would likely cause substantial competitive harm to the MCLM Group and PSI.

Skybridge concedes that the MCLM Group and PSI are among its "major competitors." Pl.'s Opp'n at 5. The information that the FCC continues to withhold from the FCC Form 499-A's and FCC Form 499-Q's submitted by the MCLM Group and PSI consists of incredibly

detailed revenue information, including: revenues received from services provided for resale by other contributors to federal universal service mechanisms, broken down by the underlying service and the amounts that are attributable to interstate and international services; revenues received from end-users and non-telecommunications sources, broken down by the underlying service and the amounts that are attributable to interstate and international services; revenues broken down by region and whether the revenue is derived from a reseller or an end-user service; revenue received from contributing resellers, with subtotals for interstate and international revenues; revenue received from end-users, with subtotals for interstate and international revenues; revenues from other goods and services; and projected gross-billed and collected end-user interstate and international telecommunications revenues. *See* Shenoy Decl. ¶¶ 7, 11-13, 44, 46-48, Attach. B (FCC Form 499-Q) at 1, Attach. C (FCC Form 499-A) at 4-7.  Courts recognize that an agency's predictive judgment about substantial competitive harm is "not capable of exact proof" and therefore "generally defer" to the agency's determination. *United Techs.*, 601 F.3d at 563 (quotation marks omitted).  In this case, the FCC has made a sufficient showing that the public disclosure of this information would, either on its own or in conjunction with other publicly available information, provide competitors with specific information about the MCLM Group and PSI's (1) competitive lines of business, (2) general market segmentation and positioning, and (3) competitive strength. *See id.* ¶¶ 48-49; Decl. of S. Cooper ¶¶ 8-9; Decl. of Sandra DePriest ("DePriest Decl.") ¶¶ 10-11.  Accordingly, the FCC has properly invoked Exemption 4 as a basis for the continued non-disclosure of information in FCC Form 499-A's and FCC Form 499-Q's.

　　　In addition, the FCC continues to withhold information from portions of the correspondence between USAC and the MCLM Group reflecting revenue information, checking

account information, payment history, amounts owed to USF, customer information, and service

pricing. Shenoy Decl. ¶¶ 44, 49-52. It is not entirely clear whether this information was

submitted under compulsion or voluntarily. If the former, the FCC must again show either that

disclosure of the information it continues to withhold "would be likely either (1) to impair the

Government's ability to obtain necessary information in the future; or (2) to cause substantial

harm to the competitive position of the person from whom the information was obtained."

*United Techs.*, 601 F.3d at 559 (quotation marks omitted). If the latter, the FCC must show that

the information is "the kind that the provider would not customarily release to the public." *Id.* at

559 n.3 (quotation marks omitted). In the end, the uncertainty is immaterial because the FCC's

showing would satisfy either standard. On the one hand, the FCC has made a sufficient showing

that the public disclosure of this information would, either on its own or in conjunction with

other publicly available information, (1) provide competitors with specific information about the

MCLM Group and PSI's competitive lines of business, general market segmentation and

positioning, and competitive strength, (2) reveal confidential account numbers, and (3) disclose

service pricing and customer identities that could be used by competitors to contact customers

and undercut pricing. *See* Shenoy Decl. ¶¶ 49-50; DePriest Decl. ¶¶ 4-9. On the other hand, it is

plain from the context and the FCC's submissions that information of this kind would not

customarily be released to the public. *See* Shenoy Decl. ¶¶ 49-50; DePriest Decl. ¶¶ 4-9, 11.

Accordingly, the FCC has properly invoked Exemption 4 as a basis for the continued non-

disclosure of information from portions of the correspondence between USAC and the MCLM

Group.

Meanwhile, Skybridge has failed to identify a single document or a single item of

information that the FCC continues to withhold and then explain why the FCC's arguments for

non-disclosure are insufficient.  Nor do the arguments that Skybridge raised on the administrative level, or that it apparently intends to raise in connection with a future petition for attorneys' fees, counsel in favor of reaching a different result.  Out of an abundance of caution, the Court addresses those arguments summarily here.

First, in the past, Skybridge has suggested that the public interest in the particular information covered by its requests should outweigh the private interest in the non-disclosure of confidential commercial information.  However, once the district court concludes that the agency has established the applicability of the exemption, its inquiry is at an end; the proponent of disclosure is not free to "bolster the case for disclosure by claiming an additional public benefit." *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 185 F.3d 898, 904 (D.C. Cir. 1999). In other words, Exemption 4 embodies a congressional determination that the public disclosure of confidential commercial information *does* outweigh the public interest in disclosure, and it is not the district court's role to second-guess that judgment on a case-by-case basis.

Second, in connection with its premature petition for attorneys' fees, Skybridge argued that the FCC's past withholdings were improper because they covered "commercially dated information."  Pl.'s Opp'n at 28.  Whatever the merits of Skybridge's argument with respect to the FCC's past withholding decisions, it has no bearing on the FCC's current withholdings.  As previously explained, the FCC has made a sufficient showing that the information it continues to withhold likely would, despite the passage of a modest amount of time, result in substantial competitive harm to the MCLM Group and PSI.  In this context, courts recognize that an agency's predictive judgment about substantial competitive harm is "not capable of exact proof" and therefore "generally defer" to the agency's determination.  *United Techs.*, 601 F.3d at 563

(quotation marks omitted).  The FCC's explanation here is logical, plausible, and entitled to this Court's deference.

Third, on the administrative level and in connection with its premature petition for attorneys' fees, Skybridge argued that Exemption 4 "does not extend to documents/information that is [sic] false" or fraudulent.  Pl.'s Opp'n at 30.  But despite having the benefit of decades of jurisprudence interpreting Exemption 4 at its fingertips, Skybridge cites to no legal authority supporting its unique interpretation of the exemption—none.  Indeed, not only is Skybridge's interpretation legally unsupported, it would also be completely unworkable because it would effectively require agencies, and later the courts, to test the truth and accuracy of each discrete item of information covered by a plaintiff's request before applying the protections afforded by Exemption 4.  Ultimately, under Skybridge's interpretation, cases turning on Exemption 4 would inevitably devolve into multiple mini-trials about the truthfulness and accuracy of the information withheld by the agency, multiplying proceedings exponentially and drawing upon scarce judicial and administrative resources while contributing little in the way of furthering the purposes and policies behind FOIA.  Such an approach would run up against the Supreme Court's observation that, when it comes to FOIA, "categorical decisions may be appropriate . . . when a case fits into a genus in which the balance characteristically tips in one direction," and its recognition that it is often problematic when the courts attempt a "case-by-case, or ad hoc" assessment of individual circumstances.  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989); *see also SafeCard Servs., Inc. v. Secs. & Exch. Comm'n*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) ("Courts are to generalize from their experience . . . in order to minimize unnecessary inquiries into factual minutiae.").[7]

---

[7] Even assuming, for the sake of argument, the existence of Skybridge's so-called "fraud exception" to Exemption 4, the Court would find that Skybridge has fallen far, far short of

2.    The FCC Has Properly Invoked Exemption 6

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In determining whether the exemption applies, courts look "not to the nature of the files," but rather to "the nature of the information" at issue. *N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1006 (D.C. Cir. 1990) (*en banc*) (quotation marks omitted). If the information "applies to a particular individual," then the threshold for application has been met. *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982). From there, the question becomes whether public disclosure would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "If a substantial privacy interest is at stake, then [the district court] must balance the privacy interest in non-disclosure against the public interest." *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 2140 (2010). In this regard, "[t]he only relevant public interest . . . is the extent to which disclosure would serve the core purpose of FOIA, which is contributing significantly to public understanding of the operations or activities of government." *Id.* at 1051 (quotation marks, notations, and emphasis omitted).

In this case, the FCC cites Exemption 6 as a basis for withholding the names and personal identifying information of officers, employees, and representatives of the MCLM Group and

---

making the sort of showing that would be required to invoke its terms. *Cf. Wolf v. Cent. Intelligence Agency*, 473 F.3d 370, 378 (D.C. Cir. 2007) (requiring a plaintiff relying on the prior disclosure doctrine to establish that the "specific" information at issue has been officially disclosed; "exactitude" and not "speculation" must be provided); *SafeCard*, 926 F.2d at 1205 (requiring a plaintiff to come forward with "compelling evidence" of governmental misconduct before overriding an exemption claim).

PSI.[8]  *See* Shenoy Decl. ¶¶ 44, 54-56.  On the one hand, "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) *cert. denied*, 494 U.S. 1078 (1990).[9]  On the other hand, the disclosure of these names and personal identifying information would contribute little or nothing to the public's understanding of the government's operations and activities.  Accordingly, the Court finds that the private interest in non-disclosure outweighs the public interest in disclosure.  The FCC has properly invoked Exemption 6.

In sum, the Court concludes that the FCC has properly invoked Exemptions 4 and 6 as a basis for the continued non-disclosure of the information withheld from Skybridge.  Therefore, even assuming, for the sake of argument, that Skybridge had not conceded the merits, the Court would nonetheless GRANT the FCC's [18] Motion for Summary Judgment.

### D.    The FCC Has Discharged Its Burden of Establishing that It Has Disclosed All Reasonably Segregable Information

Even when an agency may properly withhold a responsive record under one of FOIA's enumerated exemptions, it nevertheless must disclose any non-exempt information that is "reasonably segregable." 5 U.S.C. § 552(b).  The question of segregability is by necessity subjective and context-specific, turning upon the nature of the documents in question and the information contained therein.  *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1997).  An agency need not, for instance, "commit significant time and resources

---

[8]  The FCC has, however, disclosed some contact information for the MCLM Group and PSI, including the names of some of the companies' officers and representatives and their business addresses.

[9]  In connection with its premature petition for attorneys' fees, Skybridge argued that "Exemption 6 is inapplicable to corporations and other institutional entities which are not natural persons." Pl.'s Opp'n at 26.  While that is undeniably true, it is irrelevant because the information that the FCC has withheld includes the names and personal identifying information of natural persons.

to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Id.* at 269 n.54.  Ultimately, to discharge its burden before the district court, the agency "must provide a reasonably detailed justification rather than conclusory statements to support its claim that the non-exempt material in a document is not reasonably segregable." *Id.*

In this case, the FCC explains how it carefully reviewed and released all reasonably segregable information, a process that included at least three rounds of review—the first in connection with the WCB's initial determination, the second in connection with the FCC's consideration of Skybridge's administrative appeals, and the third in connection with this litigation.  *See* Shenoy Decl. ¶¶ 44-45, 47-52, 54-55.  Based upon this description and a searching review of the documents that the FCC has withheld only in part, the Court finds that the FCC has adequately demonstrated, in reasonable and non-conclusory terms, that all non-exempt material has either been disclosed to Skybridge or is not reasonably segregable.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT the FCC's [18] Motion for Summary Judgment.  An appropriate Order and Judgment accompanies this Memorandum Opinion.

Date:   February 2, 2012

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge